## KNIGHT v. TOWLES.

1. When, in an action to recover damages caused by a fire set in violation of the provisions of section 2392, Comp. Laws, against one, who, it is claimed, caused the fire to be set, evidence is given tending to prove that such person, as principal, directed his employe, by whom it is claimed the fire was actually set, to make a "fire break" around a certain tree claim under the control of such principal, and to "burn it off" the case should have been submitted to the jury.

2. When, in such action, there is evidence on the part of the plaintiff tending to prove that an employe who, it is claimed, set the fire, was directed by his principal to make a fire break around a tree claim under the control of the principle, the question as to whether or not the employe setting the fire was acting within the scope of his authority should have been submitted to the jury.

(Syllabus by the Court. Opinion filed April. 13, 1895.)

Appeal from circuit court, Lake county. Hon. FRANK R. AIKENS, Judge.

Action to recover damages caused by fire set, in the month of September, in violation of Comp. Laws, § 2392. Defendant had judgment, and plaintiff appeals. Reversed.

The facts are stated in the opinion.

*F. L. Soper*, for appellant.

It is immaterial to the master's responsibility that the servant at the time was neglecting some rule of action which the master had prescribed, or was exceeding his master's instructions, or was disregarding them in some particular, or that the injury that actually resulted is attributable to the servant's failure to observe the directions given him. 14 Howard U. S. 468; 15 Ark. 118; 7 Mich. 385; 50 Missouri 104; 46 N. Y. 23; 34 New Jersey 151; Cooley Torts sec. 539; Wood Master and Servant sec. 656; Story Agency sec. 452; Sher. and Red. Negligence, sec. 65. The relation of master and servant between father and his minor son arises from the duty of the former to educate and maintain the latter. Railroad v. Willis, 4 Amer. St. Rep. 124. Whether a particular act was or was not done in the line of the servant's duty is a question to be determined by the jury from the surrounding facts and circumstances. Railroad v. Hendricks, 3 Amer. St. 220; Rounds v. Railroad, 64 N. Y. 129; Cohen v. Dry, 69 N. Y. 170; 21 Am. St. Rep. 597; Railroad v. West, 8 Amer. St. Rep. 380; Dillingham v. Russell, 73 Texas 47. A master is liable to a third person injured through the negligence of his servants while acting within the scope of his employment. 14 Amer. and Eng. Enc. of Law 804; Redding v. Railroad, 3 S. Car. 1; Osborne v. McMasters, 4 N. W. 543; Ellegard v. Ackland, 45 N. W. 715; Brazil v. Peterson, 46 N. W. 331; Rogham v. Manufacturing, 48 N. W. 669; Peck v. Railroad, 70 N. Y. 587; Howett v. Swift, 3 Allen 420; Mose v. Railroad, 4 Gray 465; Levi v. Brooks, 121 Mass. 501; Fick v. Railroad, 68 Wis. 469; Fick v. Railroad, 32 N. W. 527; Railroad v. Kirk, 1 N. E. 849.

*Murray & Porter*, for respondent.

A principal is responsible to third persons for the negligence of the agent in the tranaction of the agency including wrongful acts committed by such agent in and as a part of the transaction of such business.    Comp. Laws, sec. 3997; Manier v. Railroad, 17 N. W. 952; Wood, Mas. and Ser. sec. 279; Mate v. Laid, 39 N. Y. 381; Sher. and Red. on Neg. sec. 146–148; Nichols v. Burns, 37 N. W. 752; Curtis v. Dinseen, 30 N. W. 148.

CORSON, P. J.    At the close of the plaintiff's evidence the court, on motion of defendant's counsel, directed a verdict for the defendant.    The granting of this motion is assigned as error, and is the only error assigned that we deem it necessary to consider on this appeal.

The motion to direct a verdict was made upon the ground "that the plaintiff had failed to make out a cause of action against the defendant."    In directing the verdict the court gave its views of the law of the case at some length, and, among other things, instructed them as follows:    "The court understands the law to be this: That where a statute prohibits the doing of a certain act by any person, that no person can be held liable for the acts of his servant in doing that act, unless he expressly authorizes the act.    *   *   *    That is the principle in this case,—that Mr. Towles the defendant, could not have set the fire to the prairie lawfully himself, and, in order to hold him responsible for his son's doing it, there must be an express authority by the father to the son to set the fire under those circumstances which this fire was set.    *   *   *    There is no evidence in this case that Mr. Towles directed his boy to go out and set fire to that prairie.    The only evidence, as I remember it, is that he told him to go and make a secure fire break upon that tree claim.    If it could not be done,—if it was impossible to do it,—it was the duty of the son to return to his father and tell him so.    If he acted on his own responsibility in setting the fire out, he is liable himself, and    *   *   *    you can-

not hold the father, any more than you could any other individual, for the acts of his servants. Therefore I sustain the motion of the defendant to direct a verdict in this case.''

The material part of the section of the statute upon which this action is based reads as follows: ''2392. If any person or persons shall set or cause to be set on fire any woods, marsh or prairie, or any grass or stubble lands in the months of September, * * * except as hereinafter provided, such person or persons shall be deemed guilty of a misdemeanor, * * * and shall also be liable in a civil action to any person or persons damaged by such fire to the amount of such damages.'' There are other sections of the statute providing for certain exceptional cases, but none of them, in our opinion, affect the case at bar. Sections 2393, 2394, provide for a case when one is about to commence to break or plow his land; sections 2395-2397 provide for burning off marsh, prairie grass, or stubble land, for the destruction of grasshoppers; and section 2398 provides for willfully, negligently, and carelessly setting fire, or leaving a camp fire not thoroughly extinguished.

It appears from the evidence adduced on the trial on the part of the plaintiff, that the defendant, who is a physician, lived on a farm two or more miles from the village of Oldham, where he practiced his profession. The defendant owned, or had under his control, a tree claim, on which were about five acres of trees, situated a mile or more from his farm. He had sons,—among them, Ervine, a minor, who lived with the family on the farm. On September 19, 1891, the defendant's son Ervine, it is claimed, set a fire in the vicinity of this tree claim that spread, and destroyed property belonging to the plaintiff. The evidence as to the instructions or directions given to Ervine by the defendant in regard to the tree claim was substantially as follows: Mr. Madill, who was a sufferer from the fire, testified that he called on the defendant the morning after the fire, and that after some preliminary conversation, in which he stated to the defendant his loss by the fire, the defendant said

"that he told the boy to go and make a fire break, and secure it, and to be very careful that the fire did not get away from him." Mrs. Knight testified that she was at defendant's house the evening before the fire, and that she heard the defendant tell his son Ervine "to put out a fire break on that tree claim, and make things safe there, as soon as convenient," or words to that effect, and that "he told him to burn a fire break off." It is true, on cross-examination, Mrs. Knight qualified or modified her last statement somewhat, by stating that defendant "told him to plow a fire break and burn it off." But, in the view we take of the case, this change in the testimony is not very material. It will thus be seen that there was evidence that the defendant directed the son "to burn off" the fire break,— sufficient to go to the jury, at least. There was also evidence as to the authority of the son, and as to the extent of that authority, in securing the tree claim against fire by a fire break, sufficient to go to the jury. These were questions peculiarly appropriate for the jury, as the evidence was such that different minds might reasonably draw different conclusions therefrom; and when such is the case, though the evidence be undisputed, the case should go to the jury. Railroad Co., v. Stout, 17 Wall. 657. It was clearly error, therefor, not to submit these questions to the jury.

But the learned counsel for the respondent contend that, if the son was directed to make a fire break and burn it off, it was in effect a direction to him to plow a strip at least 50 feet in width around the tree claim before burning it off, and hence, in setting the fire without so plowing the land, he was not acting within the scope of his authority, and the defendant could not be held liable. This contention is not tenable, for the reason that setting a fire for the purpose of making a fire break is not one of the cases excepted by the provisions of section 2392. It was clearly immaterial, therefore, whether there was evidence tending to prove that the servant plowed the 50-feet strip before setting the fire, or not. When the fire was set the statute

was violated, and the only question left for the jury to determine was whether the fire was set by the direction of the defendant, or by the servant, acting within the scope of his authority.

It is further contended by the counsel for the respondent that there was not sufficient proof that the fire was set on the quarter section upon which the trees were standing. If such was the fact, it would, at most, only constitute a variance that could easily have been corrected at the trial by amending the pleadings to make them conform to the proof. Comp. Laws, section 4935. A variance does not seem to have been made a ground for the motion for the direction of the verdict in the court below, and hence it cannot be consided in this court. It is true, it is somewhat difficult to determine the precise ground upon which the motion in this case was made, and it might be a serious question whether the motion sufficiently specified the ground to authorize the court to grant it. Mattoon v. Railroad Co. (S. D.) 60 N. W. 740. But, as no objection was taken to the motion on the ground of its sufficiency in form, we need not consider it further. But we do not wish to be understood as giving the sanction of the court to a motion so vague, and which fails to specify the particulars in which the case is not made out.

We are of the opinion, also, that the learned circuit court took an erroneous view of the law, in holding that the defendant could only be held liable in a civil action under the statute, for the action of the agent or servant upon proof that, he expressly directed the act of such servant or agent. This is the general rule applicable to criminal prosecutions, but to this there are many exceptions. Mechem, Ag. sec. 746. See People v. Roby, 52 Mich. 579, 18 N. W. 365, for an exhaustive discussion of this question by Cooley, C. J. The law applicable to civil cases is thus stated by Mr. Mechem in his work on Agency: "The principal's civil liability for his agent's criminal or penal acts rests upon the same considerations, and is, in

many aspects, of the same nature as his liability for his agent's torts generally. Thus, as an illustration of that class of cases in which a criminal intent is necessary to constitute the offense, the malicious assault of a conductor upon a railway passenger may be adverted to. Here, as has been seen, the principal is liable, in a civil action by the person injured, for damages occasioned by the injury. At the same time, the assault is an offense against the state, which the state may and does punish as such. As respects the individual injured, the act is a tort; as respects the state, it is a crime. But there is also another class of cases, where the liability is not dependent upon the intent, but upon the question of the infraction. These are usually the subject of express statutory prohibition, based often upon the police power of the state, and making that which might, under the circumstances, be a thing innocent or indifferent in itself, a wrong prohibited under a penalty,—a *malum prohibitum*, as distinguished from a *malum in se*. Of this class, the now common legislation providing for the recovery of penalties or damages for the prohibited sale of intoxicating liquors furnishes a well-recognized illustration. But here, as in other cases, the principal is liable only while the agent was acting within the scope of his employment. If the agent has gone outside of that to commit a criminal act, the principal is not liable." Mechen, Ag. sec. 755; George v. Gobey, 128 Mass. 289; Worley v. Spurgeon, 38 Iowa, 465; Peterson v. Knoble, 35 Wis. 85; Osborne v. McMasters, 40 Minn. 103, 41 N. ·W. 543; Smith v. Reynolds, 8 Hun, 130. In George v. Gobey, *supra*, the court says: "At common law, the master is responsible for the wrongful acts of his servant, done in the execution of the authority given by the master, and for the purpose of performing what the master has directed, whether the wrong done be occasioned by the mere negligence of the servant, or by a wanton and reckless purpose to accomplish the master's business in an unlawful manner. But if the servant goes outside of the scope of his

employment, and does a wrongful act, for purpose of his own, and not in the performance of his master's business, the master is not responsible for such act.   \*   \*   \*   We see no reason why the general principal which governs the responsibility of the master for the acts of his servant should not apply in the case at bar. The action is brought under a statute which makes that a tort which was not so before, and provides for the recovery of damages against the tort feasor. The tort consists in selling intoxicating liquor to one who has the habit of using it to excess, after notice of his habit, and a request from his wife not to sell such liquor to him. The defendant engages in the business of selling liquor voluntarily. He chooses to in trust the details of the business to a servant. If he forbids the making of sales to the intemperate person, and his servant negligently, through forgetfulness of the instruction given him, or through a failure to recognize the person, continues to make sales to that person, there is no reason why the defendant should not be responsible for the wrongful act. The sale is his sale, made in the performance of his business, and is an act within the general scope of the servant's employment." It is laid down in Paley, Ag. p. 294 (first note), that "the general rule is that the principal is responsible, civilly, for the acts of his agent, but not criminally, unless done under his express authority." And in note 1, on page 302, that learned authority says: "As a general rule, a master is liable to answer in a civil suit for the tortious or wrongful acts of his servant, if those acts are done in the course of his employment, in the master's service;   \*   \*   \*   and it makes no difference that the master did not authorize, or even know of, the servant's act or neglect, for, even if he disapproved of or forbade it, he is equally liable, if the act be done in the course of the servant's employment." The fact that the statute has made the act of setting or cause a fire to be set on prairie land, during certain months of the year, a criminal offense, does not change the law governing principal and agent or master and servant, in a civil

action brought to recover damages under the last clause of the section, making the person setting or causing the fire liable for damages that may be caused by the same.    That clause was designed to extend the common-law liability of persons for damages caused by fire—Mattoon v. Railroad Co. (S. D.) 60 N. W. 69,—by relieving the parties so damaged from the necessity of proving negligence on the part of the principal or agent.    The liability of a principal for the act of his agent, in a civil action for damages under that section, is not affected by the fact that the same act may constitute a misdemeanor if done, or caused to be done, by the principal himself.    These conclusions lead to a reversal of the judgment.    The judgment of the circuit court is reversed, and a new trial ordered.    All the judges concurring.